| |
|---|
| **Ting Lin v Mountain Val. Indem. Co.** |
| 2024 NY Slip Op 33309(U) |
| September 20, 2024 |
| Supreme Court, Kings County |
| Docket Number: Index No. 518077/20 |
| Judge: Kerry J. Ward |
| Cases posted with a "30000" identifier, i.e., 2013 NY Slip Op 30001(U), are republished from various New York State and local government sources, including the New York State Unified Court System's eCourts Service. |
| This opinion is uncorrected and not selected for official publication. |

At an IAS Term, Part 9 of the Supreme Court of the State of New York, held in and for the County of Kings, at the Courthouse, at Civic Center, Brooklyn, New York, on the 20th day of September, 2024.

PRESENT:

HON. KERRY J. WARD,

Justice.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

TING LIN and SHI QIANG LIN,

Plaintiffs,

- against -

MOUNTAIN VALLEY INDEMNITY COMPANY, CLERMONT INSURANCE COMPANY, ONE SUNSET PARK CONDOMINIUM, J. WASSER & COMPANY, 4401 PARK LLC and CENTURY MAX, INC.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

Index No. 518077/20

| The following e-filed papers read herein: | NYSCEF Doc Nos. |
|---|---|
| Notice of Motion/Order to Show Cause/ Petition/Cross Motion and Affidavits (Affirmations) | 188-192, 194-213 |
| Opposing Affidavits (Affirmations) | 214 |
| Reply Affidavits (Affirmations) | 218 |

Upon the foregoing papers in this action for negligence and breach of contract, defendants One Sunset Park Condominium (Condominium) and J. Wasser & Company (Wasser), the Condominium's managing agent (collectively, Defendants), move (in motion sequence [mot. seq.] 10) for an order, pursuant to CPLR 3212, granting summary judgment dismissing the claims asserted against them (the fourth and fifth causes of action) in the amended complaint (NYSCEF Doc No. 188).

[* 1]

## Background

In 2011, plaintiffs Ting Lin and Shi Qiang Lin (collectively, Plaintiffs), brother and sister, purchased their condominium apartment, Unit 3A, in the condominium building located at 702 44th Street in Brooklyn (Building). At that time, they also purchased a condominium unit owners' policy of insurance with coverage of $100,000, which they renewed annually. On April 3, 2019, there was a substantial fire in the Building which caused the removal of all occupants from their apartments.[1] There were fifty-four (54) apartments in the Building and the entire structure was declared unsafe for habitation by the City of New York.

On June 19, 2019, the Condominium's insurer determined that the Building was a total loss due to the extensive fire and water damage and elected to exercise its option to pay the total policy limits for the loss in the amount of $8,200,000 rather than rebuild (NYSCEF Doc No. 208). The Condominium retained an architect to assess the fire and water damage at the Building and to provide an expert opinion as to whether more than 75% of the Building was damaged. The architect concluded that more than 75% of the Building was damaged (NYSCEF Doc No. 209).

Section 5.5 (D) of the Condominium's By-Laws provides, in relevant part:

> "[i]f either 75% or more of the Building is destroyed or substantially damaged by fire or other casualty . . . the [restoration] Work shall not be performed unless Unit Owners owning 75% in common interest of the Units shall pass a

---

[1] The Fire Incident Report indicated that the fire was caused by a tenant occupying unit 6B who left a lit candle too close to a window curtain (NYSCEF Doc No. 202).

2

[* 2]

resolution to proceed with the same. . . ." (NYSCEF Doc No. 203).

Thereafter, on January 14, 2020, the Condominium unit owners held a meeting to determine whether or not the Building should be restored. At the meeting, 72.45% of the unit owners voted not to restore the Building and, instead, to sell the burnt-out shell and distribute the sale proceeds and the Condominium's insurance proceeds among the unit owners, pursuant to a partition action, as required by RPL 339-cc. That partition action, which was commenced by the unit owners, including Plaintiffs, on May 20, 2020, is currently pending before this court (*Shepherd v Wong, et al.*, Kings County index No. 508641/20). No distributions have been made as yet, and there is no indication that Plaintiffs will not be made whole once those funds are distributed.

On September 24, 2020, Plaintiffs, in their individual capacities, commenced this action against the Condominium, Wasser and others by filing a summons and a verified complaint seeking monetary damages of $600,000, the alleged value of Plaintiffs' unit (NYSCEF Doc No. 1). On August 16, 2021, after the court (Silber, J.) dismissed certain claims in the original complaint, Plaintiffs amended the complaint. Essentially, the amended complaint alleges that the Condominium and Wasser "purchased a fire insurance policy for the entire subject building . . , with a woefully inadequate limit of $8,200,000 for a building of 5(4) Apartments" (NYSCEF Doc No. 58 at ¶ 11). The amended complaint asserts a fourth cause of action for breach of contract and negligence against the Condominium and Wasser based on their alleged failure to acquire adequate fire insurance coverage for the entire Building. The fifth cause of action alleges that the Condominium

3

[* 3]

and Wasser were negligent in failing to purchase fire and water damage insurance for the Building and that "[t]he Defendants . . . are not protected by the 'Business Judgment Rule' under the aforesaid circumstances . . ." (*id.* at ¶ 30).

On September 14, 2021, the Condominium and Wasser collectively answered the amended complaint, denied the material allegations therein and asserted affirmative defenses, including that: (1) "Wasser was not employed to obtain insurance for the Building"; (2) "Wasser is an agent for a disclosed principal and cannot be held liable for the acts of the Condominium"; (3) plaintiffs' claims are barred by Sections 2.20 and 3.10 of the Condominium's By-Laws; (4) "plaintiffs lack standing to bring an action individually against the Board"; and (5) "[t]he answering defendants acted in good faith, in compliance with the Condominium Act, the By Laws and in reliance upon its professionals in obtaining the requisite fire insurance coverage for the Building" and thus "[t]he complaint is barred by the Business Judgment Rule" (NYSCEF Doc No. 71 at ¶¶ 37, 39, 41, 43, 45 and 50-51).

***Defendants' Summary Judgment Motion***

On March 25, 2023, the Condominium and Wasser collectively moved for summary judgment dismissing the negligence and breach of contract claims asserted against them. Defense counsel argues that dismissal of the amended complaint is warranted since Plaintiffs sued in their individual capacities and lack standing to assert derivative claims (NYSCEF Doc No. 189 at ¶ 21). Defense counsel also contends that Plaintiffs' negligence claim against the Condominium fails because the parties only have a contractual

4

relationship governed by the Condominium's By-Laws (*id.* at ¶ 22). Defense counsel further asserts that Plaintiffs have no cognizable legal claim against the Condominium under the Business Judgment Rule, since the Condominium's Board relied in good faith on the advice of its insurance broker and its attorney when it purchased insurance coverage for the Building in December 2013 (*id.*). Finally, defense counsel argues that Plaintiffs lack privity to assert a negligence claim against Wasser, the Condominium's managing agent, which owed no duty to them (*id.* at ¶ 24).

In support of their motion, Defendants submit an affidavit from Leroy Shepherd (Shepherd), the current president of the Condominium's board of managers and the Condominium's custodian of records, who attests that the Building was converted to condominium ownership pursuant to an April 6, 2009 declaration and annexes a copy of the Condominium's by-laws (NYSCEF Doc No. 190 at ¶ 4).

Shepherd submits "documents that establish that the Board, together with its insurance broker and an attorney . . . conducted due diligence [in 2013] prior to obtaining insurance coverage for fire and casualty loss" (*id.* at ¶¶ 6-11). Specifically, Shepherd submits a December 2013 "email chain that establishes that Klausner [the former president of the Board] sought guidance in determining the amount of Property Insurance coverage necessary to insure the Building and whether and to what extent [the Condominium] was required to provide coverage for the individual units" (*id.* at ¶ 7). The December 2013 email chain reflects that the Condominium's insurance broker opined that "[t]he best answer to interior valuations can be ascertained in the condo documents and, generally speaking,

5

condos have extremely limited restoration responsibilities within units" (NYSCEF Doc

No. 211). The Condominium's attorney also advised that:

> "[a]ccording to Article 5.5 of the bylaws should there be a casualty the condo will rebuild the units and bathroom and kitchen fixtures that are installed on the date the declaration was recorded [in April 2009]. Article 5.4 states what the condo's insurance covers. Nothing else is covered. I think you should provide your agent with a copy of the bylaws so he can review it himself" (*id.*).

Shepherd avers that, based on the due diligence conducted, "in 2013, [the Condominium] purchased Property Insurance for the Building in the amount of $8,200,000.00 and *periodically determined that the same amount was sufficient coverage through 2018*" (NYSCEF Doc No. 190 at ¶ 12 [emphasis added]).

Defendants also submit an affirmation from Theresa Racht (Racht), the Condominium's general counsel who was retained at the time of the fire and "was appointed inspector to conduct the vote of the unit owners on January 14, 2020, whether to restore the Building . . ." (NYSCEF Doc No. 192 at ¶¶ 3 and 4). Racht affirms that "plaintiffs herein voted by proxy to restore . . . which vote was duly recorded by me as inspector of election and included in the 27.55% of owners voting to restore" (*id.* at ¶ 7). When Racht received inquiries from unit owners about the cost of restoring the Building, she sent out a letter explaining that:

> "[w]hile the Condominium has broad authority under Article 5 of the By-Laws to oversee any restoration work required after a casualty loss, *the language does not shift the financial obligation for the interior of the unit from the unit owner to the Condominium*, and in fact, the special assessment provisions relating to casualty loss reaffirms the obligations of the unit

6

[* 6]

owners to pay for the work" (*id.* at ¶ 8 [emphasis added]; *see also* NYSCEF Doc No. 213 [letter to unit owners]).

In this regard, Defendants also submit an expert affidavit from Matthew J. Guzowski (Guzowski), a real estate appraiser, who opines that the replacement value of the Building, *exclusive of the residential units*, the foundation and the land, was $7.5 million as of the date of the April 2019 fire, and is currently valued at $10 million (NYSCEF Doc No. 191 at ¶ 11).

Defendants submit a memorandum of law arguing, as a threshold issue, that "plaintiffs lack standing to assert the claims contained in their complaint, since the allegations primarily address an injury to the common area and elements" of the Building (NYSCEF Doc No. 193 at 14). Defendants also argue that summary judgment is warranted because "plaintiffs cannot demonstrate that the amount of Property Insurance coverage for the Building was inadequate" (*id.* at 15). Defendants assert that "the undisputed facts demonstrate that [the Condominium] obtained maximum coverage Property Insurance for the Building as required by law and pursuant to the condominium By-Laws" (*id.*). Defendants further assert that "the documentary evidence demonstrates [that the Condominium] acted in good faith in carrying out its contractual obligations to the unit owners when it purchased Property Insurance *in 2013 and annually thereafter*" (*id.* at 17 [emphasis added]). Defendants note that Section 5.5 (C) of the Condominium's By-Laws "provide that the Building must be insured in an amount of not less than 80% of its replacement cost . . . ." (*id.* at 18).

7

[* 7]

Defendants argue that the evidence, including Guzowski's expert appraisal of the Building, proves that "the value of the Building prior to the fire on April 3, 2019, was $7,500,000, less than the coverage amount of $8,200,000 purchased by [the Condominium] and more than 80% of the current value for the Building, which, according to [Guzowski's] appraisal is, $10,000,000" (*id.* at 19). Defendants assert that they owed no duty to the plaintiffs to purchase Property Insurance for their benefit, since the By-Laws provide that unit owners should carry their own insurance (*id.* at 20). Finally, Defendants assert that:

> "[w]hile we maintain that resolution of this summary judgment motion is essentially one of contract interpretation, the 'business judgment rule' precludes this Court from looking behind [the Condominium's] decision in purchasing and renewing Property Insurance for the Building, unless the plaintiffs can make a showing that it acted in bad faith, engaged in self-dealing or other misconduct at the time" (*id.*).

Defendants argue that the record establishes a rational basis for the Condominium's purchase of insurance coverage of $8.2 million at the time of the 2019 fire in consultation with the Condominium's attorney and insurance broker *in 2013* (*id.* at 23).

***Plaintiffs' Opposition***

Plaintiffs, in opposition, submit a memorandum of law arguing that "the Business Judgment Rule does not apply when the Board exercises such poor judgment especially when same is in violation of a statute directing them to 'annually update their insurance'" (NYSCEF Doc No. 215 at 2). Plaintiffs assert that "there is no possible way that the Board can demonstrate that its actions were 'reasonable and/or fair' when their actions . . . violated the applicable statute . . . Real Property Law Section 339-bb" (*id.* at 3).

[* 8]

Plaintiffs also submit an attorney affirmation asserting that Shepherd's affidavit "<u>admits</u> that the woefully inadequate insurance policy herein for $8.2 Million for a 54-unit condominium apartment house was purchased in 2013 <u>with no increase in the insured amount up to and including the date of the fire, April 3, 2019</u>" (NYSCEF Doc No. 214 at ¶ 7). Plaintiffs' counsel argues that Shepherd admits that the Condominium violated RPL 339-bb because the Condominium's insurance was not updated annually (*id.* at ¶ 9). Regarding defendant Wasser, Plaintiffs' counsel argues that:

> "[c]ertainly, it was inc[umbant] on the managing agent to warn the Board of Managers . . . that they absolutely were violating their duty in failing to increase the amount of property insurance at all between the years 2013 and the date of the fire that destroyed the building on April 3, 2019, a period of six years where the rising property values were ignored" (*id.* at ¶ 11).

### Defendants' Reply

Defendants, in reply, submit an attorney affirmation arguing that plaintiffs' counsel's assertion that the Building was under-insured cannot be inferred by the mere fact that the Condominium did not increase its fire insurance coverage between 2013 and 2018 (NYSCEF Doc No. 218 at ¶¶ 4-5). Defense counsel argues that "plaintiffs fail to establish a violation of the business judgment rule . . ." and "plaintiffs did not contest that *in 2013* the Board purchased insurance coverage [with] a policy limit of $8,200,000.00 in good faith and in consultation with its professionals" (*id.* at ¶¶ 5 and 7 [emphasis added]). Defense counsel further notes that "plaintiffs also did not contest the adequacy of the policy in light of the expert opinion . . . that the appraised value for the Building at the time of the

9

[* 9]

fire was $7,500,000.00" (*id.* at ¶ 7). Defense counsel asserts that "the Board complied with the By-Laws and the Martin Act and purchased the required insurance every year" and "[w]hether those decisions were right or wrong is not part of the business judgment rule calculus" because "[t]he test is whether the decisions were made in good faith" (*id.* at ¶ 9).

### Discussion

Summary judgment is a drastic remedy that deprives a litigant of his or her day in court and should, thus, only be employed when there is no doubt as to the absence of triable issues of material fact (*Kolivas v Kirchoff*, 14 AD3d 493 [2d Dept. 2005]; *see also Andre v Pomeroy*, 35 NY2d 361, 364 [1974]). "The proponent of a motion for summary judgment must make a prima facie showing of entitlement to judgment, as a matter of law, tendering sufficient evidence to demonstrate the absence of any material issues of fact" (*Manicone v City of New York*, 75 AD3d 535, 537 [2d Dept. 2010], quoting *Alvarez v Prospect Hosp.*, 68 NY2d 320, 324 [1986]; *see also Zuckerman v City of New York*, 49 NY2d 557, 562 [1980]; *Winegrad v New York Univ. Med. Ctr.*, 64 NY2d 851, 853 [1985]). If it is determined that the movant has made a prima facie showing of entitlement to summary judgment, "the burden shifts to the opposing party to produce evidentiary proof in admissible form sufficient to establish the existence of material issues of fact which require a trial of the action" (*Garnham & Han Real Estate Brokers v Oppenheimer*, 148 AD2d 493 [2d Dept. 1989]).

Where, as here, owners of a condominium unit challenge an action by the condominium's board of directors, the court must apply the business judgment rule. The

10

[* 10]

Second Department has held that "[t]he business judgment rule . . . prohibits judicial inquiry into the actions of the board as long as the board acts for the purpose of the condominium, within its authority and in good faith" (*Acevedo v Town 'N Country Condominium, Section I, Bd. of Mgrs.*, 51 AD3d 603, 603 [2d Dept. 2008] [holding that condominium board "met its prima facie burden by establishing that it acted in good faith, within its authority, and for the benefit of the condominium, when it retained an insurance broker to procure insurance sufficient to cover full replacement of the buildings . . ."]). The Second Department has further held that:

> "the court's inquiry is limited to whether the board acted within the scope of its authority under the bylaws (a necessary threshold inquiry) and whether the action was taken in good faith to further a legitimate interest of the condominium. Absent a showing of fraud, self-dealing or unconscionability, the court's inquiry is so limited and it will not inquire as to the wisdom or soundness of the business decision" (*1812 Quentin Road, LLC v 1812 Quentin Road Condominium Ltd.*, 94 AD3d 1070, 1072 [2012] [internal quotation marks omitted]).

Here, Section 5.4 (A) of the Condominium's by-laws entitled "Insurance" provides, in relevant part, that:

> "[t]he Condominium Board shall obtain, and shall maintain in full force and effect, fire insurance policies with all risk extended coverage . . . insuring the Building (*including all Units, bathroom and kitchen fixtures, but not including appliances or any furniture, furnishings, decorations, belongings, or other personal property supplied or installed by Unit Owners or the tenants of Unit Owners*) and covering the interests of the Condominium, the Condominium Board, all of the Unit Owners and all Permitted Mortgagees, as their interests may appear. . . ." (NYSCEF Doc No. 198).

11

Section 5.4 (C) provides that "the coverage shall be in an amount equal to not less than eighty (80%) percent of the full replacement cost of the Building . . ." (*id.*). Section 5.4 (E) provides that "Unit Owners shall be required to carry liability insurance in such amounts as the Condominium Board shall reasonably require" and "may carry other insurance for their own benefit . . ." (*id.*). Section 5.5 (B) provides that in the event of a casualty the Condominium is only responsible to restore:

> "the portion(s) of the Building (*including all Units and the bathroom and kitchen fixtures installed therein on the date of recording the Declaration [in 2009]* and all service machinery contained therein, but not including appliances or any furniture, furnishings, decorations, belongings, or other personal property supplied or installed by either Unit Owners or the tenants of Unit Owners) affected by such Casualty Loss . . ." (*id.* at § 5.5 [B] [emphasis added]).

Thus, according to the express terms of the Condominium's by-laws, in 2018, the Condominium's board was required to procure insurance coverage equal to 80% of the "full replacement cost of the Building" (*id.*).

While Defendants demonstrated that the Condominium initially obtained $8.2 million in fire insurance coverage for the Building after consulting with its attorney and insurance broker *in December 2013*, there is no evidence in the record reflecting that the Condominium's board consulted with anyone regarding the adequacy of such insurance coverage when the Condominium renewed its insurance annually thereafter. Indeed, other than the December 2013 email chain, the Condominium fails to submit any evidence demonstrating how the Condominium's board "periodically determined" that its insurance coverage was sufficient, *especially in 2018*, the relevant policy period in effect at the time

12

of the April 2019 fire. Thus, on this insufficient record, it is impossible to determine the threshold issue of whether the board acted within the scope of its authority under the bylaws *in 2018*. Without any evidence of the Condominium board's 2018 determination, there is no prima facie showing that the board renewed its policy in 2018 in good faith and to further a legitimate interest of the Condominium. Consequently, there are issues of fact as to whether the Condominium board's 2018 determination regarding the sufficiency of its fire insurance coverage is beyond judicial scrutiny under the business judgment rule. These factual issues preclude summary judgment regarding Plaintiffs' claims for breach of the Condominium's by-laws.

However, Section 2.20 (A) of the Condominium's by-laws, entitled "Liability of the Condominium Board," specifically provides, in relevant part, that:

> "[t]he members of the Condominium Board *shall have no liability to the Unit Owners for errors of judgment, negligence, or otherwise*, except that each member of the Condominium Board shall be liable thereto for his own bad faith or willful misconduct. . . ." (NYSCEF Doc. No. 198 at § 2.20 [A] [emphasis added]).

According to the express terms of the Condominium by-laws, Plaintiffs' negligence claim is subject to dismissal.

Finally, there is no basis to impose any liability against Wasser since it is uncontested that Wasser is merely a management company that serves as an agent for the Condominium, a disclosed principal. Plaintiffs' negligence and breach of contract claims asserted against Wasser are subject to dismissal because Wasser assumed no contractual or other duty regarding the Condominium's procurement of fire insurance coverage for the

13

[* 13]

Building. The Second Department has held that a "[managing] agent who acts on behalf of a disclosed principal will not be liable for a breach of [a condominium's by-laws] unless there is clear and explicit evidence of the agent's intention to be personally bound" (*Pascual v Rustic Woods Homeowners Ass'n, Inc.*, 134 AD3d 1003, 1005 [2015]). Here, it is undisputed that Wasser was acting as managing agent for the Condominium, a disclosed principal, and Plaintiffs fail to allege or provide evidence that Wasser acted outside the scope of its duties as managing agent regarding the Condominium's insurance. Consequently, the fourth and fifth causes of action are dismissed as against Wasser. Accordingly, it is hereby

**ORDERED** that Defendants' summary judgment motion (mot. seq. 10) is only granted to the extent that: (1) the fourth and fifth causes of action in the amended complaint asserted against Wasser are dismissed, and (2) the negligence claims asserted against the Condominium in the fourth and fifth causes of action are dismissed; the motion is otherwise denied with respect to the breach of contract claim asserted against the Condominium.

This constitutes the decision and order of the court.

E N T E R,

_____
A. J. S. C.

14